**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**CASE NO.  10-cv-01790-RAL-TBM**

DANIELLE NICOLE CITRON, an individual
and MICHAEL B. CITRON, an individual,

      PLAINTIFFS/COUNTERCLAIM DEFENDANTS,

vs.

WACHOVIA MORTGAGE CORPORATION,
successor in interest to WORLD SAVINGS BANK, FSB,

      DEFENDANT/COUNTERCLAIM PLAINTIFF,

vs.

DANIELLE NICOLE CITRON, an individual and MICHAEL B. CITRON,
an individual; DANIELLE NICOLE CITRON, and MICHAEL B. CITRON,
as Trustees of THE CITRON FAMILY TRUST, CHAMPIONS'
CLUB OWNER ASSOCIATION, INC., THE TRINITY
COMMUNITIES MASTER ASSOCIATION, INC., and
THE ALLIANCE GROUP OF TAMPA BAY VI, LLC,

      COUNTERCLAIM DEFENDANTS.

_____/

## DEFENDANT'S TRIAL MEMORANDUM

Defendant/Counterclaim Plaintiff, WACHOVIA MORTGAGE, a Division of WELLS FARGO BANK, N.A., as successor through merger with WACHOVIA MORTGAGE, FSB, formerly known as WORLD SAVINGS BANK, FSB respectfully submits this Trial Memorandum to bring to the Court's attention disputed issues of law that arose at trial or that are material to the Court's consideration of this matter.

**A.**    **PLAINTIFFS ARE NOT ENTITLED TO RESCISSION BECAUSE THEIR SALE OF THE PROPERTY TERMINATED THEIR RIGHT TO RESCIND; THEY RECEIVED ALL DISCLOSURES WHICH WERE CLEAR AND CONSPICUOUS; AND THEY WAIVED ANY ALLEGED RIGHT TO RESCIND**

TILA confers on borrowers a right to rescind within three days of a mortgage loan transaction's consummation or three days from delivery of material disclosures, whichever

occurs later.  15 U.S.C. § 1635(a).  The creditor must disclose this rescission right.  12 C.F.R. 226.23(b).  Should a creditor fail to deliver notice of the right to rescind, the borrower may rescind for up to three years following the consummation of the transaction, <u>unless</u> the property is sold before.  *Id.*  If a creditor does not respond to a rescission request within twenty days, the borrower may file suit to enforce this right.  15 U.S.C. § 1635(b).

### 1.     Plaintiffs' Sale Of The Property Terminated Their Right To Rescind.

A sale of the property negates any right of rescission.  15 U.S.C. § 1635(f) provides that "an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first. . . ."  Similarly, 12 C.F.R. § 226.23 provides that "if the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever comes first."  *See also Hefferman v. Bitton*, 882 F.2d 379, 383-84 (9th Cir. 1989) (right to rescind transaction terminated on sale of property); *Finnegan v. Solie*, 2011 WL 2672233 (D. Minn. July 8, 2011) (right to rescind terminated when plaintiffs deeded the property to another via warranty deed; without an ownership interest, plaintiffs lacked standing to rescind under TILA).

The evidence at trial shows that Plaintiffs executed a Warranty Deed on May 6, 2008, selling the property to the Citron Family Trust. The Warranty Deed expressly states that the grantor – Plaintiffs – "for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other good and valuable considerations to said Grantor in hand paid by said Grantee, the receipt hereof is hereby acknowledged, **has granted, bargained and sold** to the said Grantee, and grantee's heirs and assigns forever. . ." (Trial Transcript, Pl's Ex. 11) (emphasis added).

The evidence also shows that Plaintiffs are the trustees of the trust and that their son, their

only child, is the beneficiary of the trust.  (Trial Transcript, Pages 76-78).  This does not change the result.   Specifically, this is because a trust is an independent legal entity with legal status separate and apart from the beneficiaries and grantors.  *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1290-91 (11th Cir. 2001) (a trust has legal status which is separate from its beneficial and equitable owners); *American Ass'n of Christian Schools Vol. Employees Beneficiary Ass'n v. United States*, 850 F.2d 1510, 1515 n. 4 (11th Cir. 1988) (a trust is a legal entity separate and distinct from the grantor and beneficiaries); *Vandenbossche v. First Nat'l Bank of Rochester*, 735 F. Supp. 405, 407 and n. 2 (M.D. Fla. 1990) (notwithstanding that plaintiff was sole beneficiary and grantor of the trust, plaintiff failed to present any authority for the proposition that a beneficiary or grantor is entitled to treat the trust corpus as his own and, therefore, the court would treat the trust as a legal entity separate and apart from the plaintiff).

Thus, as stated in *Caminero v. Wells Fargo Bank, N.A.*, 2008 WL 64064 (E.D. Va. Mar. 5, 2008), the only case Wells Fargo has been able to locate which addresses the specific issue before this Court, the plaintiffs' right to rescind a refinance transaction pursuant to TILA expires upon conveyance of the property to a trust via general warranty deed, despite the plaintiffs' claim that they retained a beneficial interest in the property as trust beneficiaries.

Moreover, nowhere in TILA is there an exception to the termination upon sale provisions in 15 U.S.C. § 1635(f) or 12 C.F.R. § 226.23, for the sale of the property to a Trust in which a borrower has a beneficial interest.  If Congress had wanted to create such an exception, it could have done so.  *Roswell v. LaSalle Nat'l Bank*, 450 U.S. 503, 524, 101 S. Ct. 1221, 1235 (1981) ("If Congress had meant to carve out such an expansive exception [to the Tax Injunction Act], one would expect to find some mention of it.").

Therefore, any right to rescind terminated, at the latest, on May 6, 2008, and therefore

Plaintiffs' claims fail as a matter of law.

> **2.      The Notice of Right to Cancel Bearing Michael Citron's Signature Was Clear and Conspicuous.**

Pursuant to 15 U.S.C. § 1635(a): "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later. . . ."

Plaintiffs argue that the Notice of Right to Cancel bearing Michael Citron's signature was defective.  Specifically, they contend that it is misleading in that it is dated September 12, 2007, but states that notice to rescind must be sent no later than midnight on September 1, 2007. Plaintiffs' contention both mischaracterizes the Notice and directly contradicts the requirements of TILA and multiple cases interpreting its requirements. That is, the Notice plainly advised Michael Citron that he had three days to cancel from the later of the closing date <u>or</u> the date of receipt of the Notice.

The evidence shows that the Notice provided to Michael Citron complies with TILA's requirements in disclosing Plaintiffs' right to rescind within three days after receipt.   (Trial Transcript, Plaintiff's Ex. 5).  Specifically, the Notice states: "If you cancel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of September 1, 2007 (<u>or midnight of the third business day following the latest of the three events listed above in Section A</u>)."  (emphasis added).

Section A states in relevant part:

You have a legal right under federal law to cancel this transaction without cost, within three business days from whichever of the following events occurs last:

> (1)    the date of the new transaction, which is August 29, 2007, or
> (2)    the date you received your new Truth in Lending disclosures, or
> (3)    the date you received this notice of your right to cancel.

*Palmer v. Champion Mortgage*, 465 F. 3d 24 (1st Cir. 2006), is indistinguishable from this case. In *Palmer*, the closing for the plaintiff's mortgage loan took place on March 28. Several days later, the plaintiff received copies of the notice of right to cancel. The Notice listed April 1 as the rescission right expiration date. That date had passed by the time the plaintiff received the notice. However, the Notice also indicated that, in the alternative, the plaintiff could rescind within three days after receipt of the notice. *Id.* at 26.

Several months later, the plaintiff notified the defendant of her intent to rescind the transaction. Like Plaintiffs in this case, she claimed that the Notice was "confusing" because the April 1 date included on the Notice had passed by the time she received it and that the confusing nature of the Notice triggered the extended three-year rescission period. *Id.* In finding that the Notice "was crystal clear and, thus, did not trigger an extended rescission right under TILA," the Court stated:

> [The Notice] clearly and conspicuously indicates that the debtor can rescind "within three (3) business days from whichever of [three enumerated] events occurs last." Although the Notice does state in part that rescission has to occur 'no later than midnight of APRIL 01, 2003,' the plaintiff wrests this statement from its contextual moorings. The statement is followed immediately by a parenthetical reading "(or midnight of the third business day following the latest of the three (3) events listed above)." We fail to see how any reasonably alert person - that is, the average consumer - reading the Notice would be drawn to the April 1 deadline without also grasping the twice-repeated alternative deadlines.

*Id.* at 29.

The Court also quoted TILA Regulations for the proposition that "[g]ood faith compliance with [the Federal Reserve Board's] commentary affords protection from liability under [TILA]." *Id.* The Court further noted that the "facial transparency [of the Notice] is

bolstered by the fact that the language of the Notice closely tracks the language of the model form. This is, at the very least, prima facie evidence of the adequacy of the disclosure." *Id*. Multiple decisions have followed *Palmer.  See, e.g., McMillian v. AMC Mortgage Services, Inc.*, 560 F. Supp. 2d 1210, 1219-1220 (S.D. Ala. 2008) (following *Palmer)*; *Ware v. Indymac Bank, FSB*, 534 F. Supp. 2d 835, 843-44 (N.D. Ill. 2008) (same); *Fuller v. Deutsche Bank Nat'l Trust Co.*, 642 F.3d 240, 242-43 (1st Cir. 2011) (same); *Melfi v. WMC Mortgage Corp.*, 568 F.3d 309, 310-11 (1st Cir. 2009) (same*)*; *Palmer v. Ameribanq Mortgage Group, LLC*, 2010 WL 3933273, *10 (E.D. Pa. Oct. 6, 2010) (same).

Further, "the law in the Eleventh Circuit is that even if a lender's forms are imperfect as to technical aspects of TILA's and Regulation Z's notice requirements, no enlargement of the three-day rescission period occurs so long as those forms furnish clear and conspicuous notice of rescission rights." *McMillian*, 560 F. Supp. 2d 1220-1221.  In this case, the Notice specifically advised Michael Citron of the right to rescind within three business days of whichever event occurred later, including the date the Notice was received.  Nothing more was required.  "TILA does not require perfect notice; rather it requires a clear and conspicuous notice of rescission rights." *See Walters v. Lime Financial Services, Ltd.*, 461 Fed.Appx. 910, 911 (11th Cir. 2012); *Veale v. Citibank, F.S.B.,* 85 F.3d 577, 580 (11th Cir.1996), *cert. denied,* 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997).

Accordingly, Plaintiffs do not have the right to rescind based on the allegations that Michael Citron's Notice was not clear and conspicuous.

### 3.     Plaintiffs Ratified The Transaction Or Waived The Right To Rescind.

Even if Plaintiffs had the right to rescind beyond the three day time period, Plaintiffs' claim for rescission fails because Plaintiffs, knowing of the alleged violations, waived their

claims or otherwise ratified the mortgage transaction by, among other ways, entering into a forbearance agreement with Defendant.   (Trial Transcript, Pgs. 195-196 & Def's Ex. 12).

Ratification is conduct that indicates an intention, with full knowledge of the facts, to affirm a contract which the person did not enter into or which is otherwise void or voidable. *Still v. Polecat Indus., Inc.*, 683 So. 2d 634 (Fla. 3d DCA 1996).  If a party knows of the wrongful conduct at issue, does not reject it, and takes any material act inconsistent with an intent to avoid it or delays in asserting any remedial rights, then the party ratifies the transaction. *Sunrise Farms, Inc. v. Wright*, 376 So. 2d 457 (Fla. 1st DCA 1979).

Waiver of a forgery or fraud claim can occur where a party should have discovered the fraud/forgery through ordinary diligence.  *Hurner v. Mutual Bankers Corp.*, 191 So. 831, 833 (Fla. 1933).   And, once discovered, a party claiming fraud, misrepresentation or deceit has a duty to promptly take affirmative action or waives the fraud.  *Benn v. Key West Propane Gas Corp.*, 72 So. 2d 910, 912-13 (Fla. 1954). Waiver may be implied by conduct, such as forbearance, leading one to believe that a right has been waived.  *Arbogast v. Bryan*, 393 So. 2d 606, 608 (Fla. 4th DCA 1981).  Similarly, a party waives a claim for fraud/forgery by executing an amendment to the contract after he knew or should have known of the fraud. *See Harpold v. Stock*, 65 So. 2d 477, 478 (Fla. 1953) (execution of a new contract respecting a former transaction waives any claim based on fraud); *Matusick v. DiSalvo*, 82 So.3d 1045, 1046 (Fla. 4th DCA Sept. 14, 2011) (plaintiff waived fraud claim by executing an amendment to the contract to reduce their rent after they were aware of the fraud); *Merovich v. Huzenman*, 911 So. 2d 125, 127 (Fla. 3d DCA 2005) (claim for damages from fraud was properly dismissed with prejudice because execution of a contract with knowledge that the initial agreement was fraudulently procured constitutes a waiver of claims based on the previous fraud).

Further, the Eleventh Circuit has recognized that TILA is subject to equitable defenses. *See, e.g., Ellis v. General Motors Acceptance Corp.* 160 F.3d 703, 708 (11th Cir. 1998) (holding that the statute of limitations in TILA is subject to equitable tolling).

Here, the record shows that, with Michael Citron's knowledge, Danielle Citron entered into a forbearance agreement with Wells Fargo in December 2008, which varied the terms of the loan. (Trial Transcript, Pgs. 195-196 & Def's Ex. 12).

Additionally, the record and testimony show that although Plaintiffs were in possession of the allegedly forged Notice of Right to Cancel since January 2009, Plaintiffs continued to make payments under the terms of the mortgage loan, as modified in December 2008, until June 2010. (Trial Transcript, Def's Ex. 32). Even further, it was not until September 23, 2009, nine months after their receipt of the purportedly forged document, that counsel for Plaintiffs sent Defendant a letter purporting to exercise the Citrons' right of rescission under TILA, which did not assert that the signature on the Notice of Right to Cancel was a forgery. (Trial Transcript, Pl's Ex. 7 and Pg. 123). Indeed, the record shows that these allegations did not appear until their Amended Complaint was filed in this case nearly two years later. (Trial Transcript, Def's Ex. 16, 17 and 18 and Pgs. 127-129).

Therefore, by waiting nearly two years after purportedly discovering the alleged forgery and continuing to make monthly loan payments, as modified by the forbearance agreement Plaintiffs requested, Plaintiffs waived the purported TILA violations and ratified the purported forgery/fraud. *See, e.g., Stewart v. BAC Home Loans Servicing, LP*, 2011 WL 3510909, *2 (N.D. Ill. Aug. 10, 2011) (permitting defendants to assert waiver, estoppel and laches as defenses to TILA claims).

**B.    IF RESCISSION IS GRANTED, THE COURT SHOULD EQUITABLY REORDER THE RESCISSION PROCESS SO THAT TENDER OF THE LOAN PROCEEDS OCCURS FIRST**

Wells Fargo believes that the Court should reject Plaintiffs' rescission claims. However, if the Court were to grant rescission, pursuant to 12 C.F.R. § 226.23(d):

> (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

> (4) <u>The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.</u>

Emphasis added. <u>See</u> <u>also</u> 15 U.S.C. § 1635(b) (providing the Court with the same power to modify the rescission procedure).

Thus, although as drafted, the rescission sequence under TILA begins with the release of the security interest by the lender and the later tender by the borrower of the loan proceeds, subsection (d)(4) and its companion statutory provision section 1635(b), expressly provide this Court with the authority to modify this sequence.

Specifically, "[a]lthough the right to rescind is statutorily granted [by TILA], it remains an equitable doctrine subject to equitable considerations." *Brown v. National Permanent*

*Federal Sav. & Loan Ass'n,* 683 F.2d 444, 447-48 (D.C.Cir.1982); *see also Jobe v. Argent Mortgage Co., LLC*, 2010 WL 1255683, *2 (3rd Cir. Apr. 2, 2010) ("[p]ursuant to 15 U.S.C. §1635(b), courts have the discretion to condition rescission on tender by the borrower of the property he has received from the lender."); *American Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 819 (4th Cir. 2007). As explained by the Fourth Circuit in *Shelton*, "[c]learly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest." *Id.* at 820-21.

To this end, in *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1142 (11th Cir. 1992), the Eleventh Circuit held that "a court may impose conditions that run with the voiding of a creditor's security interest upon terms that would be equitable and just to the parties in view of all surrounding circumstances." Circuit Courts in the Fourth, Sixth, Eighth, Ninth and Tenth Circuit have similarly held that it is well within a District Court's authority to re-order the rescission procedures.

Indeed, Federal Circuit Courts have consistently held that because the goal of rescission under TILA is to return the borrower and lender to the pre-mortgage status quo, as a matter of equity, rescission should be conditioned on the borrower's simultaneous or prior repayment of the loan proceeds so that the lender's interests are not left unprotected. *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) (affirming district court's modification of rescission procedure to assure borrower's repayments of loan proceeds); *FDIC v. Hughes Dev. Co.*, 938 F.2d 889, 890 (8th Cir.1991) (holding that district court did not err in conditioning rescission on tender of loan proceeds); *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 254 (6th Cir.1980) ("Since rescission is an equitable remedy, the court may condition the return of monies to the debtor upon the return of property to the creditor."); *Powers v. Sims & Levin*, 542 F.2d

1216, 1222 (4th Cir.1976) ("What we do hold is that when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due.").

Otherwise, as one federal court explained, "[a] scheme that requires the creditor to act first by canceling its security interest without assurance that the consumer will do her part risks leaving the creditor high and dry, an unsecured creditor forced to rely on the consumer's good graces and ability to tender." *Bynum v. Equitable Mortgage Group*, 2005 WL 818619 (D.D.C. April 7, 2005).

Here, based upon the record, and in particular, the conduct of Michael Citron in brokering the loan that is the subject of this transaction, then claiming foul three years later, the Citrons' delay in asserting the alleged forgery, the testimony of Mr. Citron regarding his forged signature on documents in the public records and his wife's apparent forgery of his signature, and further, the testimony of Mr. Citron regarding the ability to tender the amount required for TILA rescission (or lack thereof)[1] – an amount totaling $688,150.14 – the process should be re-ordered so that the Citrons tender the proceeds first, with Wells Fargo thereafter promptly recording a Release of Mortgage. *See Kratz v. Countrywide Bank*, 2009 WL 3063077 (C.D. Cal. Sept 21, 2009) (outlining procedure for tender of loan proceeds by borrower followed by release of security by lender); *Cheche v. Wittstat Title & Escrow Co., LLC,* 723 F. Supp 2d 851, 858–59 (E.D.Va.2010) (dismissing a claim for rescission where plaintiff alleged that she "might be able to obtain funds to tender the remaining amount due" on the loan because she did not "provide

---

[1] When Mr. Citron was questioned about his ability to tender the loan proceeds, he testified that he did not have the cash in the bank but had access to equities and stocks and interests in various companies that would be difficult to liquidate.  (Trial Transcript, Pgs. 96-97).

sufficient factual allegations demonstrating a plausible ability to tender."); *Garsh v. Wells Fargo Bank, N.A.*, 2012 WL 1207220, 6 (Bkrtcy.D.N.J. April 9, 2012) (granting summary judgment to lender where "the record before the Court provides no support for the contention that Plaintiffs are in a position to tender the balance due."); *Jobe v. Argent Mort. Co.,* 373 Fed. Appx. 260, 262 (3d Cir.2010) (upholding the district court's bench verdict that the plaintiffs were not entitled to rescission because they were unable to return the money advanced to them.).

To permit otherwise would place Wells Fargo, an innocent party in this transaction, in the place of an unsecured creditor without recourse against the asset that was pledged to secure the Note since, based on Michael Citron's testimony, Plaintiffs' house will have Florida homestead protection from creditors.

## C.    IF RESCISSION IS GRANTED, MICHAEL CITRON AS THE "NON-BORROWER SPOUSE" IS OBLIGATED TO TENDER ALONG WITH HIS WIFE

12 C.F.R. § 226.23(d)(3) provides in relevant part that "… the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value."

Plaintiffs made several references at trial to Michael Citron being the "non-borrower" spouse. *See, e.g.,* Trial Transcript, Pgs. 7, 8, 37, 41, 54. To the extent Plaintiffs intend to argue that Michael Citron is not an "obligor" because he did not receive any money or property from World Savings and therefore is not required to tender the loan proceeds to its successor, Wells Fargo, Plaintiffs' position is wrong.

At the outset, Michael Citron expressly testified that money belonging to him also belonged to his wife. Specifically, when asked if his wife had the ability to tender the loan proceeds, Michal Citron stated, "If I have it, my wife has it." *See* Trial Transcript, Pg. 99.

Accordingly, any obligation imposed on his wife to tender the loan proceeds would also be his obligation and therefore they have a joint obligation to tender.

Additionally, Wells Fargo anticipates that Plaintiffs will rely on a case cited in their pre-trial Proposed Findings of Fact and Conclusions of Law (albeit for a different proposition), *Eveland v. Star Bank, NA*, 976 F.Supp. 721, 726 (S.D.Ohio. 1997), in arguing that Michael Citron has no tender obligation. That case, however, arose in a context where the widow seeking rescission allegedly received no benefit from the loan at issue which loan resulted in her otherwise unencumbered home being the subject of a mortgage.

Specifically, in *Eveland*, the plaintiff alleged that she signed mortgage loan documents for her residence with her husband but did not know what she was signing. The loan proceeds were only delivered to her husband and were used by him to repay short-term loans that were secured by another property owned by her husband. After her husband died, the plaintiff filed suit against the defendant, Star Bank, alleging her right to rescind the loan because she did not receive two copies of the right to cancel.

The Court held, on a motion for partial summary judgment:

> When the creditor fails to comply with the regulation in the manner alleged by Plaintiff in this action, the burden of retrieving the loan proceeds from the consumer to whom they were delivered, in contravention of 12 C.F.R. § 226.23(c), should fall upon the creditor who failed to comply rather than upon a consumer to whom no proceeds were delivered. Accordingly, the Court concludes that, if Plaintiff succeeds in establishing that Star Bank did not provide the notice of her right to rescind required by 15 U.S.C. § 1635, she has rescinded the March 24, 1993 transaction, Star Bank is required to terminate its security interest in the Snider Road property, and Star Bank must look to the consumer to whom the loan proceeds were delivered for the return of those proceeds. Because Mr. Eveland, Sr., was the consumer to whom Star Bank delivered the loan proceeds, Star Bank would be required to look to his estate for the return of the loan proceeds.

*Id.* at 728.

Of significance, although the defendant's motion for summary judgment on the issue was denied, the court entered judgment in the defendant's favor after trial, finding that the plaintiff had received the required rescission forms and that the defendant complied with its obligations under TILA.  In any event, *Eveland* is distinguishable from this case.  Specifically, in this case, there is no dispute that Mr. Citron was aware of the mortgage loan at issue.  Indeed, Mr. Citron brokered the loan and plainly received and enjoyed the benefits from the mortgage loan.  Specifically, the loan at issue in this case paid off prior mortgages to which Michael Citron was a party.  Further, the funds from these prior mortgages were used to purchase and construct the residence where he and wife reside.  (Trial Transcript, Pl's Ex. 1, Def's Ex. 4 & 5; Pgs. 91-92 & 100-102).

*Stutzka v. McCarville*, 420 F.3d 757, 761 (8th Cir. 2005) is instructive.  In that case, a blind and developmentally disabled widow, Carol Gibilisco, was granted the right to rescind a mortgage which had paid off prior loans that both she and her husband had entered into, and as part of the rescission remedy, the court found that she was obligated to return the loan proceeds.  The borrower appealed, arguing that most of the principal had gone to paying off prior debts that were either void (due to her lack of capacity) or unenforceable against her (because they were her deceased husband's responsibility and could not be imputed to her).  The Eighth Circuit rejected her argument that she should not be required to reimburse the lender for paying off the allegedly void and unenforceable debts, holding:

> A necessary consequence of the rescission remedy … was that the district court was obligated to require Gibilisco to return everything she had "gained" under the Popular mortgage. Because Gibilisco received benefits from the Popular mortgage in the form of relief from the U.S. Bank mortgage and from her husband's debts (i.e., the lines of credit), she was required by Nebraska law to make restitution to Popular in order to return both parties to the status quo.

The Court further stated that, "[b]ecause Nebraska law makes clear that rescission seeks a return to the status quo *ex ante* the challenged instrument … the district court did not abuse its discretion in ordering that Gibilisco repay the $85,000 to Popular." *Id.* at 761.

Although *Stuzka* was apparently decided under Nebraska law – even though a TILA rescission claim was also alleged, in *Coleman v. Crossroads Lending Group, Inc.*, 2010 WL 4676984, *6 (D.Minn. 2010), the District Court applied the result to a claim under TILA. Specifically, in following *Stuzka*, the Court held that "[a]lthough *Stutzka* concerned rescission under Nebraska law rather than TILA, the basic concepts are the same … [j]ust as Nebraska law makes clear that rescission seeks a return to the status quo *ex ante* the challenged instrument, …. the goal of TILA is likewise a return to the status quo before the loan." *Id.* (internal citations omitted).

As with the Citrons in this case, because the goal of TILA rescission is to return the parties to their status quo, because Michael Citron was well aware of the loan and in fact, brokered the loan, and because he reaped the benefits of the loan by being relieved of the prior valid enforceable liens in favor of First Horizon Bank, he should be forced to tender the loan proceeds as well.

**D.   PLAINTIFFS' DAMAGES CLAIMS FOR TILA VIOLATIONS ARE TIME BARRED AND EQUITABLE TOLLING DOES NOT APPLY.**

**1.   Plaintiffs' Damages Claims For Alleged TILA Violations Are Time Barred.**

Pursuant to 15 U.S.C. § 1640(e), all causes of action for damages under TILA must be brought within one year from the date of the occurrence of the violation.  *See* 15 U.S.C. §1640(e); *see also Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 705 (11th Cir. 1998). The "date of the occurrence of the violation" for disclosure-based claims is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by

transmitting the funds to plaintiff.  *See Sampson v. Washington Mut. Bank*, 2011 WL 4584780,

*1 (11th Cir. Oct. 5, 2011) (TILA violation for failure to disclose the required documents occurs

when the loan transaction is consummated); *In re Smith (Smith v. American Fin. Sys., Inc.)*, 737

F.2d 1549, 1552 (11th Cir.1984); *Salois v. Dime Sav. Bank*, 128 F.3d 20, 25 (1st Cir. 1997).

The evidence shows that the mortgage transaction closed on August 29, 2007 and that

World Savings' purported TILA violations regarding the closing documents are all disclosure-

based claims which occurred at the time of closing.  (Trial Transcript, Def's Ex. 3 & 4).

Therefore, all of Plaintiffs' claims for damages were required to be brought by no later than

September 2008, one year after the funds were distributed following World Savings' receipt of

all the required documents.  Because Plaintiffs did not file this action until August 2010,

Plaintiffs' claims are time-barred.

**2.       Plaintiffs' TILA Damages Claims Are Not Subject To Equitable Tolling**

Plaintiffs contend that it was not until they retained counsel that they knew their rights

were violated.  However, it is well-settled that the statute of limitations is not tolled merely

because a plaintiff fails to understand the legal significance of certain facts or delays in seeking

the advice of counsel.  *See Vigman v. Community Nat'l Bank & Trust*, 635 F.2d 455, 459 (5th

Cir. 1981) (rejecting appellants' contention that their causes of action did not accrue until they

learned from their lawyer that they might have a cause of action).[2]  As stated in *Santos v. U. S.

Bank, N.A.*, 716 F. Supp. 2d 970, 977 (E.D. Calif. 2010), in declining to institute a rule in which

obtaining an attorney becomes the touchstone upon which tolling of the statute of limitations

may be granted, "entertaining such justification would open the floodgates, [and] allow endless

TILA suits to be filed under the guise that one's lawyer recently discovered the nondisclosure."

_____

[2] This decision is binding on this Court.  *Bonner v. City of Prichard*, 661 F. 2d 1206 (11th Cir. 1981).

Thus, mere ignorance of the existence of a cause of action does not postpone the running of the statute of limitation on that cause of action. *Chidiac v. Cadillac Gage Co.*, 541 So.2d 650, 650 (Fla. 3d DCA 1989).

Further, for equitable tolling to apply, pursuant to binding precedent, a plaintiff must demonstrate that despite his or her diligence, the defendant concealed its wrongdoing such that plaintiff could not discover the facts that form the basis for the claim. *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F. 3d 823, 832 (11th Cir. 1999); *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572 (M.D. Fla. 2006) (equitable tolling requires "fraudulent conduct beyond the non-disclosure….").

Here, the evidence shows that in January 2009 (18 months before suit was filed), the Citrons had retained counsel and had all the documents that put them on notice of the claims of forgery. (Trial Transcript, Pg. 121). In fact, Michael Citron testified that he discussed the purported forgery with his then-counsel. (Trial Transcript, Pg. 122) Therefore, even if the limitations period was tolled until January 2009 when the Citrons first retained counsel, as of January 2010 – long before they filed their original action – their claims were time-barred. Additionally, there is no evidence to show that Defendant took any affirmative action or made any attempt to deter Plaintiffs from contacting and retaining counsel prior to or following the loan transaction or from pursuing a legal claim against Defendant at any time.

Further, the Eleventh Circuit has expressly held that where the alleged TILA violations are based on either nondisclosure or failure to provide certain documents at closing, equitable tolling simply does not apply. *See Sampson*, 2011 WL 4584780 at *2 ("The mere violation of the statute based on nondisclosure cannot serve as extraordinary circumstances that merit tolling. [B]ecause 'nondisclosure is not a continuing violation for purposes of the statute of limitations'

and does not by itself toll the running of the limitations period", plaintiff's claims are time-barred); *Frazile v. EMC Mortg. Corp.*, 2010 WL 2331429, *4 (11th Cir. June 11, 2010) (holding that alleged nondisclosure of TILA-related documents was the same conduct making up the TILA violation itself, therefore equitable tolling could not apply because any "failure to disclose at the time of closing would not only give rise to a TILA claim, but would also toll the statute of limitations, thereby eviscerating the time limit expressly set out in 1640(e).); *Velardo v. Fremont Investment & Loan*, 2008 WL 4768850 (11th Cir. Nov. 3, 2008) (holding that under TILA, "Nondisclosure is not a continuing violation for purposes of the statute of limitations").

Thus, equitable tolling does not apply to save Plaintiffs' TILA claims.

### E.      TARP DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION

Plaintiffs contend in defense to Wells Fargo's foreclosure counterclaim, that Wells Fargo received Troubled Asset Relief Plan ("TARP") funds and therefore should not be allowed to recover from Plaintiffs through foreclosure because it has not complied with the loss mitigation requirements imposed by TARP.  This defense initially fails since no evidence was admitted at trial regarding this defense or the receipt of TARP funds.

Additionally, this defense fails because there is no provision of TARP that provides a private right of action or a valid defense to foreclosure.  *See, e.g., Thomas v. Pentagon Federal Credit Union*, 393 Fed. Appx. 635 (11th Cir. 2010) (no private right of action under TARP); *Rowley v. American Home Assurance Co.*, 2009 WL 700684 (E.D. La. Mar. 17, 2009) (no private right of action under TARP).

**F.      DEFENDANT IS ENTITLED TO AN EQUITABLE LIEN IN THE AMOUNT OF FUNDS PAID TO SATISFY EXISTING MORTGAGES AND TO FORECLOSE ON SAME.**

Should the Court not reject the Citrons' rescission claims and as a result, void the mortgage, Wells Fargo is still entitled to an equitable lien and foreclosure of that lien.   The Florida Supreme Court has held that where a lender's funds are used to satisfy existing liens or are expended for a property owner's benefit, an equitable lien should be imposed on the property and the lender permitted to foreclose this lien.  *Palm Beach Sav. & Loan, Ass'n v. Fishbein*, 619 So. 2d 267 (Fla. 1993).   That is, to the extent a lender's "funds were used to satisfy the first mortgage and property tax lien on the property. . . . [c]ourts have not hesitated to impose equitable liens. . . ."  *First NLC Fin. Servs., LLC v. Altamirano*, 847 So. 2d  516 (Fla. 3d DCA 2003).  *See In re Alford*, 403 B.R. at 125 (granting lender an equitable lien in the amount of the mortgage where debtor sold the property without lender's knowledge).   Stated differently, even if a lender who pays off existing liens is not entitled to foreclosure on the mortgage under the circumstances, the lender is allowed to stand in the shoes of the prior mortgagees who would have been entitled to proceed against the mortgagors because the proceeds from the lender's loan were used to satisfy the prior liens against the home.  *Havoco of Am., Ltd. v. Hill*, 790 So. 2d 1018, 1024 (Fla. 2001) (reaffirming its holding in *Fishbein*).

In this case, the evidence shows that Wells Fargo's predecessor loaned Plaintiffs $625,271.23 and $78,701.31, and that these funds were used to pay off the existing prior first and second First Horizon Bank mortgages, which were recorded as liens against the property.  (Trial Transcript, Pl's Ex. 1, Def's Ex. 4 & 5).   Thus, Wells Fargo is entitled to an equitable lien on the property in the amount of the loan funds used to pay the prior existing mortgages.  *Fishbein*, 619 So. 2d 267.  This alone entitles Wells Fargo to an equitable lien on the property.

Even if the equitable lien were not warranted by the mere fact that Wells Fargo's predecessor's funds were used to pay off prior liens on the property, equitable principles and the Citrons' conduct in acquiring this loan, also require the imposition of an equitable lien. Specifically, it is well settled that principles of equitable subrogation apply where the "funds obtained through fraud or egregious conduct were used to invest in, purchase or improve the homestead." *In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880, 888 (11th Cir. 2003) (quoting *Havoco*); *In re Hecker*, 264 Fed.Appx. 786, 2008 WL 283282 (11th Cir. 2008). *See, e.g., In re Mazon*, 387 B.R. 641 (M.D. Fla. 2008) (where defendant stole funds from plaintiff and used the funds to purchase and renovate a condominium, plaintiff was entitled to an equitable lien on the property in the amount of the stolen funds); *In re Thiel*, 275 B.R. 633 (M.D. Fla. 2001) (imposing an equitable lien where evidence showed that debtor's fraud obtained funds used to purchase the property); *In re Mesa*, 232 B.R. 508, 512-13 (S.D. Fla. 1999) (imposing an equitable lien against debtor's property because the debtor fraudulently obtained funds from creditor and used the funds to pay for home improvements).

Here, the record shows that the Citrons obtained the loan funds used to pay off the existing liens on the property through fraud. Specifically, *inter alia* Michael Citron – a licensed mortgage broker who had purchased and sold numerous properties and, thus, had also participated in "hundreds of closings" as he testified – plainly knew he was to receive certain disclosures and did not, because as he testified at his deposition, he short-circuited the process. Although his testimony at trial conflicted with his deposition testimony on several occasions, it is clear that the Citrons were not innocent victims of some kind of forgery as they would like the Court to believe. Indeed, the Citrons were active participants in the origination of this loan. (Trial Transcript, Pgs. 91-92 & 100-102).

Therefore, under either principle of unjust enrichment or general considerations, imposition and foreclosure of an equitable lien on the property in the amount of $703,972.54 for the amount of the prior satisfied mortgages is warranted and for the amounts it advanced for taxes and insurance in the amount of $46,463.96.

### **CONCLUSION**

Plaintiffs are not entitled to rescission of their mortgage loan, nor are they entitled to any damages pursuant to TILA.  Accordingly, the Court should enter judgment against Plaintiffs on the Second Amended Complaint.  Further, Wells Fargo is entitled to a judgment of foreclosure and even if the Court finds that it is not entitled to a foreclosure judgment, Wells Fargo is entitled to an equitable lien and foreclosure of that equitable lien.  Additionally, if the Court should find that the Citrons are entitled to rescission of their mortgage loan, Wells Fargo is entitled to an equitable re-ordering of the TILA rescission process so that tender of the loan proceeds is required before the mortgage is released.

Respectfully submitted,

CARLTON FIELDS, P.A.
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL  33401
mwinston@carltonfields.com
Telephone:  (561) 659-7070
Facsimile:   (561) 659-7368

By:    /s/ Michael K. Winston
         Michael K. Winston
         Florida Bar No. 051403

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing system:

*VIA CM/ECF*:
Brian K. Korte, Esq.
Scott J. Wortman, Esq.
Karen Berger, Esq.
Korte & Wortman, P.A.
2041 Vista Parkway
West Palm Beach, Florida 33411
Telephone:  (561) 228-6200
Facsimile:   (561) 228-6202
bkorte@kwlawfirm.com
sscheffer@kwlawfirm.com
kberger@kwlawfirm.com
swortman@kwlawfirm.com
akutner@kwlawfirm.com
dtabert@kwlawfirm.com
*Counsel for Plaintiffs*

Vanessa Abreu, Esq.
Fidelity National Title Group
6600 N. Andrews Ave., Suite 300
Ft. Lauderdale, FL 33309
vanessa.abreu@fnf.com
mariseli.gonzalez@fnf.com
*Co-Counsel for Defendant*

/s/ Michael K. Winston
Michael K. Winston
mwinston@carltonfields.com
Florida Bar No. 051403