## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DANIELLE NICOLE CITRON and
MICHAEL B. CITRON,

      Plaintiffs,

v.                                  CASE NO:  8:10-cv-1790-T-26TBM

WACHOVIA MORTGAGE CORPORATION,
successor in interest to WORLD SAVINGS
BANK, FSB,

      Defendants.

_____/

## O R D E R

**THIS CAUSE** came before the Court for a nonjury trial on December 17, 2012. The Court now has before it the parties' post-trial briefs (Dkts. 188, 290) and proposed findings of fact and conclusions of law (Dkts. 189, 191), as well as the transcripts (Dkt. 184) and exhibits (Dkts. 179, 180, 181) from the trial proceedings.

## OVERVIEW

On August 11, 2010, Plaintiffs, Michael Citron and Danielle Citron, husband and wife, brought this action against Wachovia Mortgage Corporation, as successor in interest to World Savings Bank, FSB, seeking rescission of a residential mortgage loan and damages under the Truth In Lending Act, 15 U.S.C. §1601 *et seq.* ["TILA"] and Federal

Reserve Regulation Z, 12 C.F.R. § 226.1 *et seq*. (Dkt. 1.)  When they filed their Second

Amended Complaint on February 2, 2012, they omitted Wachovia Mortgage Corporation

as the Defendant and substituted Wachovia Mortgage FSB, successor in interest to World

Savings Bank, FSB.  (Dkt. 125.)  Plaintiffs allege that neither Danielle Citron, as the

actual borrower, nor Michael Citron, as the co-owner of the property, received two copies

of the Notice of Right to Cancel the loan as required by TILA.  They also claim that

Michael Citron's signature appearing on the Notice of Right to Cancel that was provided

to World Savings Bank, FSB (Plaintiffs' lender) after the loan closing is a forgery and

that the Notice also did not comply with TILA's requirements to be clear and

conspicuous.  Plaintiffs seek damages for Defendant's alleged failure to provide these

Notices pursuant to TILA and for the alleged failure to timely rescind after receiving

Plaintiffs' rescission request.  Further, Plaintiffs seek to rescind the loan pursuant to

TILA for these alleged violations.

Defense counsel raised at trial the defense that Plaintiffs have sued the wrong

entity in this action.  Specifically, counsel asserted that Plaintiffs improperly named

Wachovia Mortgage Corporation and then Wachovia Mortgage, FSB as party Defendants,

as opposed to the proper entity, Wachovia Mortgage, a division of Wells Fargo Bank,

N.A. ("Wells Fargo"), as successor through merger of Wachovia Mortgage FSB, formerly

known as World Savings Bank, FSB.  However, counsel now advises the Court that he is

withdrawing this contention and wishes to have the Court address the merits of the case.

(Dkt. 191, p. 2.)  Therefore, the Court will proceed to consider the merits of this case and will direct that the case style be amended to add the proper Defendant's name as set forth by defense counsel.

With respect to Mr. Citron's forgery claim, Defendant asserts that this claim is a disingenuous attempt to avoid the obligations under the Note and Mortgage and that the damages claim for allegedly failing to provide two copies of the Notice of Right to Cancel is time-barred pursuant to TILA's one-year statute of limitations.  Defendant also alleges that Mr. Citron's claims regarding the form of the Notice fail as a matter of law. With regard to Mrs. Citron, Defendant asserts that her claims under TILA fail because it is undisputed that she executed an acknowledgment of receipt of two copies of the Notice of Right to Cancel, creating a rebuttable presumption of delivery that was not refuted at trial.  Defendant claims that in any event, Plaintiffs abandoned this claim at trial.  As to both Plaintiffs, Defendant asserts that their claims for damages for failing to timely rescind after receiving Plaintiffs' request to do so were waived and that the mortgage loan transaction was ratified by Plaintiffs' conduct.  Similarly, Defendant asserts that Plaintiffs' claim for failing to provide the Notice of Right to Cancel was waived and ratified by Plaintiffs' conduct.

Finally, Defendant argues that if rescission under TILA is granted, the rescission process should be equitably re-ordered in accordance with binding precedent and as permitted by the express terms of TILA, so that Plaintiffs tender the loan proceeds before

the mortgage is released.  Defendant asserts that otherwise Plaintiffs will end up with a free house while Defendant becomes either an unsecured creditor in Plaintiffs' likely to be filed bankruptcy case or an unsecured creditor with an uncollectable judgment.

Defendants (or more specifically, Wells Fargo (successor through merger with Wachovia Mortgage, FSB), as the current owner and holder of the Note and Mortgage) also asserted a counterclaim for foreclosure of the subject mortgage because Plaintiffs have failed to make any monthly payments since June 2010.[1]  Plaintiffs challenge the counterclaim based on their alleged exercise of their right of rescission and Defendant's alleged failure to comply with an MDL settlement in offering Plaintiffs options for loan modification.  Plaintiffs also assert that Defendant lacks standing and that it cannot recover because they received funds from the federal government under the Troubled Asset Relief Program ("TARP").  Defendant asserts, as alternative relief, that if it is not granted judgment on its counterclaim for foreclosure, that judgment be entered granting it an equitable lien under Florida law in the amount of funds used to satisfy the prior liens on the property as well as funds expended for taxes and insurance and that the Court enter a judgment foreclosing that lien.

In bench trials, the judge serves as the sole fact-finder and, thus, assumes the role of the jury.  In this capacity, the judge's function includes weighing the evidence,

---

[1]   The Clerk entered defaults on March 11, 2011, against Counterclaim-Defendants, The Alliance Group of Tampa Bay VI, LLC, The Trinity Communities Master Association, Inc. and The Champions' Club Owners Association, Inc., for their failure to appear and defend the action. (Dkts. 59-61.)  Therefore, the remaining parties to the counterclaim are Plaintiffs and Plaintiffs as Trustees of the Citron Family Trust.

evaluating the credibility of witnesses, and deciding questions of fact, as well as issues of

law.  See Childrey v. Bennett, 997 F.2d 830, 834 (11th Cir. 1993) (holding that "it is the

exclusive province of the judge in non-jury trials to assess the credibility of witnesses and

to assign weight to their testimony").  A plaintiff in a civil case bears the burden of

satisfying the finder-of-fact that he or she has proven every element of his or her claim by

a preponderance of the evidence.  The Court has carefully considered the parties'

stipulations of fact, the testimony and evidence admitted at trial, as well as the arguments

and submissions of the parties' respective counsel and now makes the following findings

of fact and conclusions of law:

## FINDINGS OF FACT

In July 2005, Plaintiffs purchased the Baracoa Court residential property at issue in

this case.  As part of this purchase, Plaintiffs entered into a mortgage and note for

construction financing with First Horizon Home Loan Corporation.  As a licensed

mortgage broker, Plaintiff Michael Citron was familiar with how mortgage loans were

originated, having been involved with hundreds of closings.  (Dkt. 182, Trial Transcript,

pp. 30-31, 35, 58.)  In fact, both Michael Citron and Danielle Citron, through the

company that employed them, Sloan Mortgage, had brokered approximately 47 loans for

which World Savings Bank, FSB was the lender.  (Id. at 175-176.)  On July 31, 2007,

Plaintiffs entered into a second transaction with First Horizon Home Loan Corporation,

through which they paid off their construction loan and entered into two new loans for in

excess of $700,000.00.  (Dkt. 189, Defendants' Trial Exs. 1 & 2.)  About this same time,

Plaintiffs sought to refinance the mortgage loan so that they could take additional cash out

of their equity in the property.  To this end, on August 3, 2007, Plaintiffs submitted a loan

application to World Savings, FSB in which they sought to refinance once again with the

purpose of the refinance being "cash out."  (Defendant's Trial Ex. 3.)  The funds from

this loan would be used to pay off the two existing mortgages from First Horizon Bank in

the amounts of $625,271.23 and $78,701.31, totaling $703,972.54.  (Dkt. 179, Plaintiffs'

Trial Ex. 1.)

The loan application contained information that an individual named Al Vuolo had

prepared the application.  (Id.)  Although Mr. Citron testified at his deposition that he was

acting as his own broker on the loan, he changed his testimony at trial, stating that he was

not the broker and that Al Vuolo was.  (Dkt. 182, Trial Transcript, pp. 100-102.)  Michael

Citron stated at trial that he "was obviously incorrect" at his deposition with regard to his

deposition testimony.  (Id. at 101.)  The loan application also reflected that Mr. Vuolo had

taken the application over the telephone from Danielle Citron, whereas Michael Citron

testified that he and his wife completed the application together.  (Id. at 92.)  Danielle

Citron then signed this application containing this false information.  (Id. at 91-93.)

As a result of his involvement in his own loan transaction, Mr. Citron testified

during his deposition that the initial disclosures required by TILA were not sent because

he "short-circuited" the normal origination process.  (Id. at 100-102; Dkt. 80, p. 49.)  At

the trial however, Mr. Citron testified that the disclosures were not sent out because they would have been hand-delivered either directly to him or his wife.  (Dkt. 182, Trial Transcript, pp. 100-102.)  When confronted with the conflicting deposition testimony, Mr. Citron again stated that he was "incorrect" at his deposition.  (Id. at 102.)  Thereafter, Mr. Citron scheduled the closing with a closing agent, Angie Rivera, whom he had routinely used for his closings for his borrower customers.  (Id. at 33-34, 39.)  Prior to the closing, World Savings Bank, FSB provided the closing agent with express closing instructions requiring it to provide both Mr. and Mrs. Citron with two copies of the Notice of Right to Cancel, as mandated by TILA.  (Dkt. 182, Trial Transcript, pp. 182-183; Dkt. 180 Defendant's Ex. 11.)

On August 29, 2007, the loan closing proceeded, but Plaintiffs did not appear at the closing together.  (Dkt. 182, Trial Transcript, pp. 40-41.)  Instead, Mrs. Citron appeared first to sign the closing documents, which included the Note in the amount of $787,500.00 (signed only by Mrs. Citron, as the borrower) and the Mortgage securing repayment of the Note (Dkt. 180, Defendant's Trial Exs. 4 & 5), and then Mr. Citron came to the closing agent's office later that day (Id.).  Notwithstanding that they were not present at the same time, the mortgage that was executed has only a single notarization and a single set of witness signatures.  (Id. at Ex. 4.)  For his involvement in the loan process, notwithstanding his trial testimony that he was not the broker, Mr. Citron received $7,875.00 (the entire amount of the broker fee) in the form of a credit against the

settlement costs for the mortgage.  (Dkt. 182, Trial Transcript, pp. 89-90.)  After the closing, World Savings Bank, FSB received the documents from the closing agent, performed a quality assurance review of the closing file, and then sent a letter to the closing agent regarding several missing documents from the closing, including the Notice of Right to Cancel for Mr. Citron.  (Id. at 192.)

Michael Dolan, a former World Savings officer and Wells Fargo corporate representative, testified that (what was then) World Savings Bank, FSB provided the funds to the closing agent and it was the closing agent's responsibility to disburse those funds upon receipt of the required documents.  (Id. at 239.)  The record is unclear as to the actual date the loan funds were disbursed.  (Id. at 59, 102, 166.)  Mr. Dolan further testified that no one from World Savings Bank, FSB had any incentive to participate in any type of fraud regarding the closing or the origination documents, since World Savings Bank, FSB held all of its originated mortgages in its own portfolio and, therefore, any impropriety in the closing would place World Savings Bank, FSB at risk.  (Id. at 208-209.)  Although Mr. Citron did not  remember the exact date, shortly after the closing Mrs. Citron received copies of the closing documents from Chelsea Title.  (Id. at 60.)  As Angie Rivera, the closing agent, testified at trial, Chelsea Title, the company that closed the loan, did not keep copies of World Savings Bank, FSB's closing documents and its files contained only a limited number of documents from the closing.  (Id. at 159.)

Plaintiffs executed a Warranty Deed on May 6, 2008, that "granted, bargained, and sold" the property to the Citron Family Trust and, therefore, Plaintiffs ceased to be the record owners of the property before any claim for rescission was made. (Dkt. 179, Plaintiffs' Trial Ex. 11.)  From the date of the closing until December 2008, payments were made on the Note and Mortgage.  (Dkt. 182, Trial Transcript, p. 192.)  Neither Plaintiff made any claims during that time regarding any impropriety in the closing or in the execution of documents at the closing.   (Id.)  In December 2008, Mrs. Citron contacted World Savings Bank, FSB, which by then had changed its name to Wachovia Mortgage, FSB, to request relief from the mortgage payments due to financial distress. (Id. at 192.)  As a result, Wachovia Mortgage, FSB offered, and Mrs. Citron accepted, a forbearance agreement under which Wachovia Mortgage, FSB agreed to the deferment and capitalization of the regularly scheduled payments due for November 15, 2008, December 15, 2008, and January 15, 2009, with the interest portion of those payments added to the principal balance of the loan.  (Defendant's Trial Ex. 12.)

In January 2009, Plaintiffs retained Donald Bradshaw, their prior counsel.  That same month, at their attorney's request, Plaintiffs requested and received from Wachovia Mortgage, FSB copies of documents from the closing.  (Dkt. 182, Trial Transcript, p. 121.)  Included among these documents was the Notice of Right to Cancel executed on September 12, 2007, by Mr. Citron, which notice Mr. Citron claimed, for the first time in the Amended Complaint filed in this action on November 9, 2010, to be a forgery.  (Id.)

Although in possession of this purportedly forged document since January 2009, neither Plaintiffs nor their counsel contacted Wachovia Mortgage, FSB to assert any claims of impropriety.  Instead, Plaintiffs continued to make payments under the terms of the mortgage loan, as modified by the forbearance agreement, until June 2010.  (Dkt. 180, Defendants' Ex. 32.)

On September 23, 2009, nine months after their receipt of the alleged forged Notice, Mr. Bradshaw sent Wachovia Mortgage, FSB a letter purporting to exercise Mrs. Citron's right of rescission under TILA.  (Dkt. 179, Plaintiffs' Ex. 7.)  The letter stated that Mrs. Citron was rescinding the loan transaction pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1635, and 12 C.F.R. § 226 *et seq.* because "the required material disclosures were not provided or were provided incorrectly."  (Id.)  Nowhere in the letter was there any assertion of forgery or any claim of any issues with the Notices of Right to Cancel executed by either Plaintiff.  (Dkt. 182, Trial Transcript, pp. 122-123 & Plaintiffs' Ex. 7.)  Further, the letter did not state that Mrs. Citron would tender the loan proceeds back to Defendant upon release of the mortgage or whether Plaintiffs had the ability to tender the $688,150.14 of loan funds that would be required for TILA rescission.  (Id.)  Because the letter contained no specific information stating the actual basis for rescinding the transaction, Wachovia Mortgage, FSB reviewed Plaintiffs' entire file for TILA compliance.  (Dkt. 182, Trial Transcript, pp. 197-98; Plaintiffs' Trial Ex. 7.)

As part of this review, Wachovia Mortgage, FSB confirmed it had executed acknowledgments of two copies of the Notices of Right to Cancel from both Plaintiffs and determined that the closing files contained executed copies of all material disclosures required by TILA and the information shown on those disclosures was determined to be accurate and within the tolerances permitted by TILA.  Thus, on September 29, 2009, Wachovia Mortgage, FSB timely sent Mr. Bradshaw a letter rejecting the rescission demand.  (Dkt. 182, Trial Transcript, pp. 197-98; Dkt. 179, Plaintiffs' Trial Ex. 8.) Plaintiffs did not challenge this determination, nor did they assert that the demand was made as a result of a forged document or any other alleged problems with the Notice of Right to Cancel signed by Mr. Citron.

Plaintiffs did file suit eleven months later in the matter styled <u>Danielle Nicole Citron and Michael B. Citron v. Wachovia Mortgage Corp.</u>, Case 8:10-cv-01591-JDW-AEP, which they voluntarily dismissed without prejudice, and there were no claims included in that action regarding forgery or any impropriety with the Notice of Right to Cancel signed by Mr. Citron.  These claims also did not appear in their initial Complaint filed in this action either, which simply asserted that Plaintiffs did not receive any notices at all.  (Dkt. 182, Trial Transcript, pp. 127-29; Dkt. 180, Defendants' Trial Exs. 16, 17, 18.)  Once Plaintiffs' claims were challenged by a Motion to Dismiss, they asserted new allegations of forgery in a subsequently filed Amended Complaint.  (Dkt. 189, Defendants' Trial Ex. Ex. 18.)

At trial, Defendants offered into evidence multiple documents, including recorded documents from the public records, which purport to bear Mr. Citron's signature.  At the outset, from the Court's review of these documents, it appears that Mr. Citron's signature contains many variations and, therefore, the Court is not persuaded by Mr. Citron's self-serving testimony that the signature on the Notice of Right to Cancel admitted into evidence is not his.  In addition, Mr. Citron testified that one of the documents admitted into evidence also contained a forged signature.  This document, however, was a Notice of Commencement filed in the public records of Pasco County, which contained not only his signature, but also his wife's signature and a notary stamp from a notary who worked at the same office as his wife.  (Dkt. 182, Trial Transcript, pp. 106-110.)  This Notice of Commencement was prepared and recorded well before any loan application was submitted to World Savings Bank, FSB and, as Mr. Citron testified at trial, his wife would have reason to sign his name to get the work on the house started.  (Id. at 115-116.)  Furthermore, Mr. Citron testified at his deposition that he is aware that his wife signs his name for him sometimes.  (Id. at 114-115; Dkt. 80, p. 69.)  At trial, he changed his testimony to state that he "does not recall" if his wife signs his name for him sometimes.  (Dkt. 182, Trial Transcript, p. 110.)  However, when confronted with the conflicting deposition testimony, Mr. Citron testified that he did not "recall specific times" that his wife signed his name for him.  (Id. at 114.)

In light of the circumstances surrounding the Notice of Commencement, it is more likely than not that Mrs. Citron signed her husband's name with his knowledge and consent and then, in apparent violation of Florida law, had the forged signature notarized. (Id. at 115-116.)   Further, a review of the signature on the notarized and recorded Notice of Commencement reveals that it is strikingly similar to both the allegedly forged signature on the Notice of Right to Cancel and the purportedly forged signature on the Truth in Lending Disclosure Statement (also dated September 12, 2007).  (Id. at pp. 106-110).  The conclusion the Court can draw from this evidence is that either Mr. Citron signed the Notice of Right to Cancel and is now denying it is his signature in order to obtain a windfall, or, more likely, that with her husband's knowledge, Mrs. Citron signed her husband's name, with his knowledge, on the Notice of Commencement, the Truth in Lending Disclosure Statement, and the Notice of Right to Cancel at issue in this case. This conclusion is strengthened by Mrs. Citron's noticeable failure to testify regarding her claims in the case and the signatures on the various documents, even though she was present in the courtroom at trial.  Equally clear to the Court is that Mr. Citron was aware of his wife's conduct from the inception of the loan at issue.  Specifically, while Mr. Citron was allegedly aware of the "forged" signature, neither he nor his former or present legal counsel raised the issue with World Savings Bank, FSB, Wachovia Mortgage, FSB or Wells Fargo until well into this case when faced with a motion to dismiss.

-13-

Turning to Defendants' counterclaim for foreclosure, the record is clear that Wells Fargo, as successor by merger to Wachovia Mortgage FSB, f/k/a as World Savings Bank, FSB, is the current owner and holder of the Mortgage and Note, which are currently in default. (Dkt. 182, Trial Transcript, p. 174; Dkt. 180, Defendants' Trial Ex. 32.) Pursuant to the Note executed by Mrs. Citron and the Mortgage executed by both Plaintiffs, Wells Fargo is entitled to recover its principal, interest, late charges, costs, attorney's fees and other expenses incurred in enforcing the note and mortgage. (Dkt. 180, Defendant's Trial Exs. 4, 5.) As of December 11, 2012, the following amounts being sought in this case are due and owing: Principal of $845,476.45, $102,288.85 in interest, and escrow advances comprised of taxes and insurance in the amount of $46,463.96. (Id. at Ex. 32.) As to the remaining amounts due as permitted by the Note and Mortgage, since the value of the property is well below the loan balance, Wells Fargo states that it elects not to seek these amounts, other than its attorney's fees and costs in this action. (Dkt. 191, p. 12.) With respect to the claim for rescission, the testimony at trial established that the amount Plaintiffs need to tender to rescind is $688,150.14. (Dkt. 182, Trial Transcript, pp. 201-203; Dkt. 189, Defendants' Trial Ex. 32.) It should also be noted that Plaintiffs do not presently have the money to tender the proceeds required by TILA. (Dkt. 182, Trial Transcript, pp. 96-97.)

-14-

## CONCLUSIONS OF LAW

Plaintiff Danielle Citron claimed in the Second Amended Complaint that she did not receive two copies of the Notice of Right to Cancel and that she was entitled to rescission and damages for Defendants' failure to provide disclosures, as well as damages for their failure to rescind.  To support these claims, Mrs. Citron was obligated to come forward with evidence to meet her burden of proof at trial.  See, e.g., Briggs v. Provident Bank, 349 F.Supp.2d 1124, 1129 (N.D. Ill. 2004) (noting that 15 U.S.C. § 1635(c) creates a rebuttable presumption of delivery of the required documents when there is written acknowledgment of receipt of any disclosures required); Jobe v. Argent Mortg. Co., LLC, 2010 WL 1255683, at *2 (3$^d$ Cir. 2010) (rejecting borrower's self-serving testimony of non-receipt); Strang v. Wells Fargo Bank, N.A., 2005 WL 1655886, at *3-4 (E.D. Pa. 2005) (holding that borrowers' denial of receipt of notice of right to cancel was insufficient to overcome presumption of receipt).  At trial, however, Mrs. Citron failed to testify, and no evidence was admitted in support of her claims.  Further, Mrs. Citron's attorneys represented that she was abandoning her claims regarding non-receipt of the notice of right to cancel.  (Dkt. 182, Trial Transcript, p. 155.)

With respect to the claims of Mr. Citron, Plaintiffs argue that they are entitled to rescission of the mortgage loan because Mr. Citron did not receive the Notice of Right to Cancel and that the signature on that Notice bearing his name is a forgery.  The Court must concur with Defendant that in view of the circumstances surrounding the origination

of the loan -- Mr. Citron's involvement in the brokering this loan, the testimony regarding the allegedly forged signature on a notarized document filed in the public records, and his inexplicable delay in asserting this claim of forgery -- Mr. Citron is not entitled to rescission. The Court does not find credible Mr. Citron's testimony regarding the signature on the Notice of Right to Cancel. At trial, Mr. Citron repeatedly changed his testimony from that which he provided at his deposition. Likewise, in an attempt to bolster his credibility before the Court, Mr. Citron falsely testified that he had never been accused of theft or dishonesty (Dkt. 182, Trial Transcript, p. 24) when, in fact, he had been personally sued during the pendency of this case for allegedly taking $200,000 as part of a civil racketeering conspiracy and was well aware of the existence of this suit at the time he testified before this Court (Id. at 84; Defendant's Trial Ex. 34). Even if the Court were able to conclude that Mr. Citron did not sign the Notice of Right to Cancel, the only logical alternative seems to be that Mrs. Citron signed her husband's name for him on the Notice of Right to Cancel and that Mr. Citron was aware of his wife's conduct from the inception of the origination of the mortgage and note at issue. As noted above, this conclusion is supported by the fact that although Mr. Citron allegedly first became aware of the "forged" signature in January 2009, neither he nor his lawyer raised the issue with Wachovia Mortgage, FSB or Wells Fargo until well into this case in his response to a motion to dismiss. (Dkt. 18, Amended Complaint, ¶ 17.)

Even if Plaintiffs' forgery claims were credible, Plaintiffs are still not entitled to rescission because as Defendant argues, the sale of the subject property by the Plaintiffs to the Citron Family Trust on May 6, 2008, terminated any alleged right to rescind in accordance with15 U.S.C. § 1635(f) of TILA.  15 U.S.C. § 1635 (f) provides that "an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first ...."   Similarly, 12 C.F.R. § 226.23 provides that "if the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever comes first."  Plaintiffs argue that the "sale" to the trust was not really a sale, but merely a "transfer" for "estate planning purposes" and, therefore, the provisions in TILA that would cut off their right to rescind do not apply.  However, as Defendant point outs, the Warranty Deed executed on May 6, 2008, by Plaintiffs expressly states that "for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other good and valuable considerations to said Grantor in hand paid by said Grantee, the receipt hereof is hereby acknowledged, has granted, bargained and <u>sold</u> to the said Grantee, and grantee's heirs and assigns forever. . ." (Dkt. 182, Trial Transcript, pp. 135-36; Dkt. 179, Plaintiffs' Trial Ex. 11; Dkt. 189, Defendant's Trial Ex. 9) (emphasis added).  The Court agrees with Defendant that this sale or transfer of the property to the trust terminated any alleged right to rescind.  A trust is an independent legal entity with legal status separate

-17-

and apart from the beneficiaries and grantors.  See American Ass'n of Christian Schools Vol. Employees Beneficiary Ass'n v. United States, 850 F.2d 1510, 1515 n. 4 (11th Cir. 1988) (noting that a trust is a legal entity separate and distinct from the grantor and beneficiaries); Vandenbossche v. First Nat'l Bank of Rochester, 735 F. Supp. 405, 407 and n. 2 (M.D. Fla. 1990) (notwithstanding that plaintiff was sole beneficiary and grantor of the trust, plaintiff failed to present any authority for the proposition that a beneficiary or grantor is entitled to treat the trust corpus as his own and, therefore, the court would treat the trust as a legal entity separate and apart from the plaintiff).

Here, Mr. Citron testified that he and his wife are the trustees of the trust and that their son, their only child, is the beneficiary of the trust.  (Dkt. 182, Trial Transcript, pp. 76-78.)  Mr. Citron also testified that the property at issue is titled in the name of the Citron Family Trust.  (Id. at 135-136.)  Nowhere in TILA is there an exception to the termination upon sale provisions in 15 U.S.C. § 1635(f) or 12 C.F.R. § 226.23, for the sale of the property to a Trust in which a borrower or his/her child has a beneficial interest.  The Court must agree with Defendant that if Congress had wanted to create such an exception, it could have done so.  Therefore, Plaintiffs' right to rescind, if any, terminated on May 6, 2008 -- the date that the property was sold to the Citron Family Trust.

Plaintiffs also argue that they are entitled to rescission because the Notice of Right to Cancel was not clear and conspicuous.  Pursuant to 15 U.S.C. § 1635(a): "the obligor

shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later. . . ."  Plaintiffs contend that the Notice is misleading because it is dated September 12, 2007, but states that notice to rescind must be sent no later than midnight on September 1, 2007.  (Dkt. 179, Plaintiffs' Trial Ex. 5.)  Defendant argues that the Notice is reasonably clear and provides sufficient notice because it plainly advised Plaintiffs that they had three days to cancel from the later of the closing date or the date of receipt of the Notice.  (Id.) Defendant further argues that the Notice complies with TILA's requirements in disclosing Plaintiffs' right to rescind within three days after receipt.  (Id.)

Specifically, the Notice states: "If you cancel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of September 1, 2007 <u>(or midnight of the third business day following the latest of the three events listed above in Section A)</u>."  (Id. (emphasis added).)

Section A states in relevant part:

You have a legal right under federal law to cancel this transaction without cost, within three business days from whichever of the following events occurs last:

the date of the new transaction, which is August 29, 2007, or
the date you received your new Truth in Lending disclosures, or
the date you received this notice of your right to cancel.

(Id.)

The Court agrees with Defendants and finds that the analysis in Palmer v.
Champion Mortgage, 465 F.3d 24 (1ˢᵗ Cir. 2006), a factually similar case, is persuasive.
In Palmer, the closing for the plaintiff's mortgage loan took place on March 28, and
several days later, the plaintiff received copies of the notice of right to cancel.  The
Notice listed April 1 as the rescission right expiration date.  That date had passed by the
time the plaintiff received the notice.  However, the Notice also indicated that, in the
alternative, the plaintiff could rescind within three days after receipt of the notice.  Id. at
26.  Several months later, the plaintiff notified the defendant of her intent to rescind the
transaction.  Like Plaintiffs in this case, she claimed that the Notice was "confusing"
because the April 1 date included on the Notice had passed by the time she received it and
that the confusing nature of the Notice triggered the extended three-year rescission
period.  Id.  In finding that the Notice "was crystal clear and, thus, did not trigger an
extended rescission right under TILA," the Court stated:

> [The Notice] clearly and conspicuously indicates that the debtor can rescind
> "within three (3) business days from whichever of [three enumerated]
> events occurs last."  Although the Notice does state in part that rescission
> has to occur 'no later than midnight of APRIL 01, 2003,' the plaintiff
> wrests this statement from its contextual moorings.  The statement is
> followed immediately by a parenthetical reading "(or midnight of the third
> business day following the latest of the three (3) events listed above)."  We
> fail to see how any reasonably alert person - that is, the average consumer -
> reading the Notice would be drawn to the April 1 deadline without also
> grasping the twice-repeated alternative deadlines.

Id. at 29.

The Palmer Court also quoted TILA Regulations for the proposition that "[g]ood faith compliance with [the Federal Reserve Board's] commentary affords protection from liability under [TILA]." Id.  The Court further noted that the "facial transparency [of the Notice] is bolstered by the fact that the language of the Notice closely tracks the language of the model form.  The Palmer decision is consistent with the Eleventh Circuit's position, as restated in McMillian v. AMC Mortgage Services, Inc., 560 F. Supp. 2d 1210 (S.D. Ala. 2008), that:  "even if a lender's forms are imperfect as to technical aspects of TILA's and Regulation Z's notice requirements, no enlargement of the three-day rescission period occurs so long as those forms furnish clear and conspicuous notice of rescission rights." Id. at 1220-1221 (citing Smith v. Highland Bank, 108 F.3d 1326, 1326 (11th Cir. 1997); Veale v. Citibank, F.S.B., 85 F.3d 577 (11th Cir. 1996)).  Here, the record establishes that the Notice specifically advised Plaintiffs of the right to rescind within three business days of whichever event occurred later, including the date the Notice was received.  (Dkt. 179, Plaintiffs' Trial Ex.  5).  Nothing more was required.  This result is not altered by the date of disbursement of the loan proceeds.  Although the date of actual disbursement in this case is unclear, even if disbursement occurred prematurely, this would be a violation of 12 C.F.R. 226.23(c), a claim not alleged in this case and one that would be time-barred by TILA's one year limitations for damages claim.  As the Third Circuit held in Smith v. Fidelity Consumer Discount Co., 898 F.2d 896, 904 (3d Cir. 1990):

The premature performance in this case, while a violation of § 226.23(c), is most certainly not a violation of § 226.23(b). The two subsections, while adjacent in the C.F.R., are separate with a violation of only § 226.23(b) extending the rescissory period.

Even if this Court were able to find that Plaintiffs had the right to rescind beyond the three day time period, their rescission claim fails because, armed with knowledge of the claimed violations, they waived or otherwise ratified those violations by (a) entering into a forbearance agreement with Defendants and (b) waiting too long to make their claim of forgery. TILA is indeed subject to equitable defenses such as waiver and ratification. See, e.g., Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 708 (11th Cir. 1998) (applying the equitable defense of equitable tolling to statute of limitations claims under TILA); see also Stewart v. BAC Home Loans Servicing, LP, 2011 WL 3510909, at *2 (N.D. Ill. 2011) (permitting defendants to assert waiver, estoppel and laches as defenses to TILA claims). Ratification is conduct that indicates an intention, with full knowledge of the facts, to affirm a contract which the person did not enter into or which is otherwise void or voidable. See Still v. Polecat Indus., Inc., 683 So. 2d 634 (Fla. Dist. Ct. App. 1996). If a party knows of the wrongful conduct at issue, does not reject it, and takes any material act inconsistent with an intent to avoid it or delays in asserting any remedial rights, then the party ratifies the transaction. See Sunrise Farms, Inc. v. Wright, 376 So. 2d 457 (Fla. Dist. Ct. App. 1979). Waiver of a forgery or fraud claim can occur where a party should have discovered the fraud/forgery through ordinary diligence. See Hurner v. Mutual Bankers Corp., 191 So. 831, 833 (Fla. 1933). And, once

discovered, a party claiming fraud, misrepresentation or deceit has a duty to promptly take affirmative action or waives the fraud.  See Benn v. Key West Propane Gas Corp., 72 So. 2d 910, 912-13 (Fla. 1954).  Waiver may be implied by conduct, such as forbearance, leading one to believe that a right has been waived.  See Arbogast v. Bryan, 393 So. 2d 606, 608 (Fla. Dist. Ct. App. 1981).  Similarly, a party waives a claim for fraud/forgery by executing an amendment to the contract after he knew or should have known of the fraud.  See Harpold v. Stock, 65 So. 2d 477, 478 (Fla. 1953) (finding that execution of a new contract respecting a former transaction waives any claim based on fraud).

The record before the Court shows that, with Mr. Citron's knowledge, Mrs. Citron entered into a forbearance agreement with Defendants in December 2008, which varied the terms of the loan.  (Dkt. 182, Trial Transcript, pp. 195-196; Dkt. 180, Defendant's Trial Ex. 12.)  The Court agrees with Defendant that pursuant to Florida law, this conduct resulted in a waiver of the forgery claim.  Additionally, the record and testimony show that although Plaintiffs were in possession of the allegedly forged Notice of Right to Cancel since January 2009, Plaintiffs continued to make payments under the terms of the mortgage loan, as modified in December 2008, until June 2010.  (Dkt. 180, Defendant's Trial Ex. 32.)  It was not until September 23, 2009, nine months after their receipt of the purportedly forged document, that Plaintiffs' counsel sent Defendant a letter purporting to exercise Plaintiffs' right of rescission under TILA, which did not assert that the signature on the Notice of Right to Cancel was a forgery.  (Dkt. 182, Trial Transcript, p. 123; Dkt.

179, Plaintiffs' Trial Ex. 7.)  As previously stated, these allegations did not appear until the Amended Complaint was filed in this case nearly two years later.  (Dkt. 182, Trial Transcript, pp. 127-29; Dkt. 180, Defendant's Trial Exs. 16, 17, 18.)  By waiting nearly two years after discovering the alleged forgery and continuing to make monthly loan payments, as modified by the forbearance agreement Plaintiffs requested, Plaintiffs waived the purported TILA violations and ratified the purported forgery/fraud.

Even if this Court were inclined to agree with Plaintiffs that the alleged TILA violations actually occurred, pursuant to 15 U.S.C. § 1640(e), all causes of action for damages under TILA must be brought within one year from the date of the occurrence of the violation.  15 U.S.C. §1640(e).  The "date of the occurrence of the violation" for disclosure-based claims is no later than the date the plaintiff enters the loan agreement or, possibly, when the defendant performs by transmitting the funds to plaintiff.  <u>See Sampson v. Washington Mut. Bank</u>, 2011 WL 4584780, at *1 (11th Cir. 2011) (holding that TILA violation for failure to disclose the required documents occurs when the loan transaction is consummated).  The instant mortgage transaction closed on August 29, 2007, and the purported TILA violations regarding the closing documents are all disclosure-based claims which occurred at the time of closing.  (Dkt. 180, Defendant's Trial Exs. 3 & 4.)  Therefore, the Court agrees with Defendant that Plaintiffs' claims for damages were required to be brought by no later than September 2008, one year after the funds were distributed following Defendant's receipt of all the required documents.

Because Plaintiffs did not file this action until August 2010, Plaintiffs' claims are time-barred.

Although Plaintiffs argue that it was not until they retained counsel that they knew their rights were violated, Defendant urges that equitable tolling does not apply in this case and the Court agrees.  It is well-settled that the statute of limitations is not tolled merely because a plaintiff fails to understand the legal significance of certain facts or delays in seeking the advice of counsel.  See Vigman v. Community Nat'l Bank & Trust, 635 F.2d 455, 459 (5th Cir. 1981) (rejecting appellants' contention that their causes of action did not accrue until they learned from their lawyer that they might have a cause of action).[2]  As stated in Santos v. U. S. Bank, N.A., 716 F. Supp. 2d 970, 977 (E.D. Cal. 2010), in declining to institute a rule in which obtaining an attorney becomes the touchstone upon which tolling of the statute of limitations may be granted, "entertaining such justification would open the floodgates, [and] allow endless TILA suits to be filed under the guise that one's lawyer recently discovered the nondisclosure."  Further, for equitable tolling to apply, as stated by the Eleventh Circuit, a plaintiff must demonstrate that despite his or her diligence, the defendant concealed its wrongdoing such that plaintiff could not discover the facts that form the basis for the claim.  See Morton's Market, Inc. v. Gustafson's Dairy, Inc., 198 F. 3d 823, 832 (11th Cir. 1999); see also

---

[2]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decision of the former Fifth Circuit rendered prior to October 1, 1981.

Sampson, 2011 WL 4584780, at *2 (holding that "[t]he mere violation of the statute

based on nondisclosure cannot serve as extraordinary circumstances that merit tolling[,

b]ecause 'nondisclosure is not a continuing violation for purposes of the statute of

limitations' and does not by itself toll the running of the limitations period"); Frazile v.

EMC Mortg. Corp., 2010 WL 2331429, *4 (11th Cir. 2010) (holding that alleged

nondisclosure of TILA-related documents was the same conduct making up the TILA

violation itself, therefore, equitable tolling could not apply because any "failure to

disclose at the time of closing would not only give rise to a TILA claim, but would also

toll the statute of limitations, thereby eviscerating the time limit expressly set out in

1640(e)").

In the instant case, not only was Mrs. Citron aware at the closing in 2007 of the

purported TILA violations now asserted, but she likely participated in the alleged

"forgery" that is the basis of the claims now asserted.  Moreover, the evidence shows that

in January 2009 (18 months before suit was filed), Plaintiffs had retained counsel and had

all the documents that put them on notice of the claims of forgery.  (Dkt. 182, Trial

Transcript, p. 121.)  In fact, Mr. Citron testified that he discussed the purported forgery

with his then-counsel.  (Id. at 122.)  Therefore, even if the limitations period was tolled

until January 2009 when Plaintiffs first retained counsel, as of January 2010 -- long

before Plaintiffs filed their original action -- their claims were time-barred.  Additionally,

there is no evidence to show that Defendant took any affirmative action or made any

attempt to deter Plaintiffs from contacting and retaining counsel prior to or following the loan transaction or from pursuing a legal claim against Defendant at any time.

Because Plaintiffs did not have the right to rescind, Defendant had no obligation to comply with the rescission demand.  Further, the sole document admitted into evidence reflecting a demand for rescission was sent by Plaintiffs' former counsel only on behalf of Mrs. Citron.  (Dkt. 179, Plaintiffs' Trial Ex. 7).  No evidence of any written rescission demand made on Mr. Citron's behalf was presented.  Therefore, as to Mr. Citron, there can be no damages for this denial.  And, as noted above, inasmuch as no evidence was admitted supporting rescission on behalf of Mrs. Citron, her damages claim likewise fails.  Additionally, as the record and testimony show, Defendant responded to Mrs. Citron's rescission demand within a matter of days.  (Dkt. 182, Trial Transcript, pp. 196-97; Dkt. 179, Plaintiffs' Trial Ex. 8.).  As Mr. Dolan testified, following receipt of the demand letter, Wachovia Mortgage, FSB reviewed its files to determine whether the file was complete and accurate, and when it determined that the file showed no basis for rescission under TILA, it denied the TILA rescission request.  (Dkt. 182, Trial Transcript, pp. 197-98.)  Defendant cannot be subjected to penalties and damages for failing to rescind when Plaintiffs provided no valid basis for seeking rescission in their demand letter.  (Dkt. 179, Plaintiff's Trial Ex. 7.)  Plaintiffs did not challenge the refusal to rescind at that time, but then well into these proceedings raised as a new basis for rescission that Mr. Citron's signature acknowledging receipt of all disclosures was somehow forged.  The Court

agrees that Plaintiffs are not entitled to damages for the denial of their attempt to rescind the loan.

Finally, Defendants argue that Wells Fargo is entitled to a judgment of foreclosure against Plaintiffs on its counterclaim. It is well settled under Florida law that the holder of a note and mortgage is the real party in interest and has standing to seek enforcement of the note and mortgage. See Mortgage Elec. Registration Sys., Inc. v. Azize, 965 So. 2d 151, 153 (Fla. Dist. Ct. App. 2007) (stating that the owner and holder of a note and mortgage have standing to seek enforcement of the note and mortgage in a foreclosure action); Philogene v. ABN Amro Mortgage Group Inc., 948 So. 2d 45, 46 (Fla. Dist. Ct. App. 2006) (holding that "we conclude that ABN had standing to bring and maintain a mortgage foreclosure action since it demonstrated that it held the note and mortgage in question."). Thus, Wells Fargo as the current owner and holder of the Note and Mortgage, has standing to bring this counterclaim.

As to the merits of the counterclaim, the record demonstrates that on August 29, 2007, Plaintiffs executed and delivered a Mortgage and Mrs. Citron executed a Note, securing payment of the Mortgage in the amount of $787,500 from World Savings Bank, FSB for real property. (Dkt. 189, Defendant's Trial Exhs. 4 & 5.) The Mortgage was recorded on September 5, 2007, in the Official Records Book 7622 at Page 1286, of the Public Records of Pasco County, Florida, and mortgaged the property described therein. (Dkt. 180, Defendants' Trial Ex. 4.) The property is now owned of record by the Citron

Family Trust pursuant to the Warranty Deed dated May 6, 2008.  (Dkt. 179, Plaintiffs'

Trial Ex. 11.)  The Note and Mortgage are in default, the last payment received being

applied to the May 2010 installment of the mortgage loan.  (Dkt. 182, Trial Transcript, p.

198.)  Wells Fargo provided Plaintiffs with a courtesy notice of default and intent to

accelerate on July 17, 2010.  (Id.)  Wells Fargo then properly accelerated the Note by

filing its Counterclaim for Mortgage Foreclosure on January 24, 2011.  See Fowler v.

First Fed. Sav. & Loan Ass'n of Defuniak Springs, 643 So. 2d 30, 34 (Fla. Dist. Ct. App.

1994) (holding that "[t]he filing of suit for foreclosure amounts to exercise of the option

of the mortgage to declare the whole of the principal sum and interest secured by the

mortgage due and payable.")  Plaintiffs did not cure the default by the stated date or at

any other time and did not otherwise respond to the Notice of Intent to Foreclose.  (Dkt.

180, Defendants' Trial Ex. 31.)

     Plaintiffs asserted several affirmative defenses to the foreclosure claim; however,

none of these precludes the entry of a foreclosure judgment in Wells Fargo's favor.  As to

the first affirmative defense based upon the right of rescission, the Court has now

concluded that Plaintiffs do not have the right of rescission.  In the second affirmative

defense, Plaintiffs allege that Wells Fargo failed to satisfy conditions precedent to

foreclosure of the mortgage and/or equitable lien, in that, under the Settlement Agreement

executed in In Re: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing And Sales

Practices Litigation, United States District Court for the Northern District of California,

San Jose Division, Case No. M:09-CV-2015-JF, an action involving Pick-A-Pay loans such as Plaintiffs' mortgage loan at issue in this action ("the MDL action"), between Wells Fargo and the class members including Plaintiffs, Wells Fargo is prohibited from foreclosing without having "reasonably solicited" them for either a loan modification under HAMP or a loan modification under the Mortgage Assistance Program 2 ("MAP2R").  In the third affirmative defense, Plaintiffs similarly argue that the Settlement Agreement requires them to be considered for a loan modification under HAMP or MAP2R.  In the fourth affirmative defense, Plaintiffs likewise argue that the Settlement Agreement requires Wells Fargo to offer the Home Affordable Foreclosure Alternatives ("HAFA") or its internal short-sale or deed-in-lieu of foreclosure alternatives to them if they are unable to qualify for loan modifications under the HAMP or MAP2R guidelines and who are otherwise qualified for a short-sale or deed-in-lieu of foreclosure under HAFA or Wells Fargo's internal guidelines.  Nevertheless, as Wells Fargo asserts, these three defenses are improperly raised in this action, since the Settlement Agreement expressly states that "the Parties agree that the Court [the United States District Court for the Northern District of California] shall retain exclusive and continuing jurisdiction over the Lawsuit, the Parties, Settlement Class Members, and the Settlement Administrator in order to interpret and enforce the terms, conditions, and obligations under this Agreement."  (Dkt. 182, Trial Transcript, pp. 71-75.)  Therefore, the only court that can

enforce the Settlement Agreement is the United States District Court for the Northern District of California and Plaintiffs have not sought relief before that court.  (Id.)

In the fifth affirmative defense, Plaintiffs maintain that Wells Fargo's allegations fail to establish a reasonable chain of ownership for the promissory note.  Specifically, Plaintiffs allege that although Wells Fargo claims to be the owner of the promissory Note, the promissory note indicates that World Savings Bank, FSB is the lender.  As Mr. Dolan testified and as the documents admitted into evidence establish, Wells Fargo is the successor to World Savings Bank, FSB and is the owner and holder of the mortgage and note.  (Id. at 174.)  Finally, in the sixth affirmative defense, Plaintiffs allege that Wells Fargo received Troubled Asset Relief Plan ("TARP") funds and now seeks to recover additional funds from Plaintiffs through foreclosure even though it has not complied with the loss mitigation requirements imposed by TARP.  This defense fails inasmuch as Plaintiffs failed to present any evidence at trial regarding this defense or the receipt of TARP funds.  It also fails because Plaintiffs failed to identify a provision of TARP that confers a private right of action or a valid defense to foreclosure.  See Rowley v. American Home Assurance Co., 2009 WL 700684 (E.D. La. 2009).  Therefore, the Court concludes that Wells Fargo is entitled to a foreclosure judgment in the amount of $845,476.45 -- the current principal balance, as well as $102,288.85 for interest and $46,463.96 for escrow advances, and to have the property sold at public auction.  (Dkt. 182, Trial Transcript, p. 204; Dkt. 189, Defendant's Trial Ex. 32.)  The Court will enter a

-31-

separate Final Judgment of Foreclosure pursuant to which the sale of the Property will take place.

  **ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

  1.  The Clerk is directed to amend the style of this case to include as a Defendant: Wachovia Mortgage, a division of Wells Fargo Bank, N.A., as successor through merger of Wachovia Mortgage FSB, formerly known as World Savings Bank, FSB.

  2.  The Clerk is directed to enter final judgment in favor of Defendants terminate any pending motions, and close this case.

  **DONE AND ORDERED** at Tampa, Florida, on February 12, 2012.


         _s/Richard A. Lazzara_____
         **RICHARD A. LAZZARA**
         **UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record